# EXHIBIT A

FILED: QUEENS COUNTY CLERK 11/18/2019 11:59 PM          INDEX NO. 719515/2019

NYSCEF DOC. NO. 1          Case 1:20-cv-00054-KAM-RML   Document 1-1   Filed 01/03/20   Page 2 of 16 PageID #: 6   RECEIVED NYSCEF: 11/18/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
-----------------------------------------------------------------X

MATTHEW CULHANE,

               Plaintiff,

           -against-

SAFEWAY CONSTRUCTION ENTERPRISES, LLC,
SAFEWAY CONSTRUCTION, INC., PRIMELINE
UTILITY SERVICES COMPANY, STEVEN
CESTARO, and RAYMOND CESTARO,

              Defendants.

-----------------------------------------------------------------X

**Index No.:**
Date Filed: 11/18/2019

**Plaintiff Designates:**
Queens County

**Basis of Venue:**
Defendant's Residence

***SUMMONS***

Defendant's Residence:
54-60 44th Street
Maspeth, New York 11378

TO THE ABOVE-NAMED DEFENDANTS:

      ***YOU ARE HEREBY SUMMONED*** to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve a   notice   of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

Dated:  New York, New York
        November 18, 2019

                          STEVENSON MARINO LLP
                          Attorneys for Plaintiff

                          By:    s/Justin R. Marino
                                 Justin R. Marino

                          75 Maiden Lane, Suite 402
                          New York, New York 10038
                          Tel: (212) 939-7228
                          Fax: (212) 531-6129
                          Email: jmarino@stevensonmarino.co

Case 1:20-cv-00054-KAM-RML   Document 1-1   Filed 01/03/20   Page 3 of 16 PageID #: 7

**DEFENDANTS ADDRESSES:**

Safeway Construction Enterprises, LLC
54-60 44th Street
Maspeth, New York 11378

Safeway Construction, Inc.
54-60 44th Street
Maspeth, New York 11378

Primeline Utility Services Company
1424 Fourth Avenue Suite 515
Seattle, Washington98101

Steven Cestaro
48 Rumson Rd
Massapequa, NY 11758

Raymond Cestaro
31 S Bay Drive
Massapequa, NY 11758

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

|  |  |
|---|---|
| MATTHEW CULHANE,<br><br>     Plaintiff,<br><br>  -against-<br><br>SAFEWAY CONSTRUCTION ENTERPRISES, LLC, SAFEWAY CONSTRUCTION, INC., PRIMELINE UTILITY SERVICES COMPANY, STEVE CESTARO, and RAYMOND CESTARO,<br><br>     Defendants. | **COMPLAINT**<br><br>**Index No.:**<br><br>**JURY TRIAL DEMANDED** |

MATTHEW CULHANE ("Plaintiff"), by and through his attorneys, STEVENSON MARINO LLP, as and for his Complaint against SAFEWAY CONSTRUCTION ENTERPRISES, INC., SAFEWAY CONSTRUCTION, INC. (collectively "Safeway"), PRIMELINE UTILITY SERVICES COMPANY ("Primeline"), STEVE CESTARO, and RAYMOND CESTARO (collectively, "Defendants"), alleges upon knowledge as to himself and his own actions and upon information and belief as to all other matters as follows:

**NATURE OF CASE**

1.  This is a civil action for damages and equitable relief based upon Defendants' violations of Plaintiff's rights guaranteed to him by: (i) violations of the Fair Labor Standards Act for failure to pay overtime; and (ii) violations of the provisions of the New York Labor Law ("NYLL"), NYLL § 190; N.Y. Comp. Codes R. & Regs. ("NYCCRR") tit. 12, § 142-2.2 for failure to pay gap-time and overtime; (iii) violation of the NYLL §§ 195, 198 for failing to provide accurate wage statements and the notice and acknowledgment of pay form, (iv) violation of the NYLL §215 and §740 for unlawful retaliation for voicing complaints about Defendants' knowingly unlawful conduct

1

that was a danger to the public safety; and (iv) any other cause(s) of action that can be inferred from the facts set forth herein.

## PARTIES

2.     At all relevant times, Plaintiff resided in Queens County, New York, and was an "employee" entitled to protection as defined by the NYLL, NYCCRR, and the FLSA.

3.     At all relevant times herein, SAFEWAY CONSTRUCTION, INC. was and is a New York corporation with its principal place of business located 54-60 44th Street, Maspeth, New York 11378.

4.      At all relevant times herein, SAFEWAY CONSTRUCTION ENTERPRISES, LLC was and is a New York Limited Liability Company with its principal place of business located 54-60 44th Street, Maspeth, New York 11378.

5.     At all relevant times herein, PRIMELINE UTILITY SERVICES COMPANY was and is a Washington Company with its principal place of business located 1424 Fourth Avenue Suite 515 Seattle, Washington 98101.

6.     At all relevant time herein, Defendant Steve Cestaro was and is Safeway's Chief Executive Officer, while Defendant Raymond Cestaro, Steve Cestaro's brother was and is Safeway's Chief Operating Officer. In these roles, Defendants Steve Cestaro and Raymond Cestaro personally managed and oversaw the day-day-day operations of Safeway, and had the power to hire and fire and approve all personnel decisions with respect to all of Safeway's employees. Defendants Steve and Raymond Cestaro were responsible for setting the terms and conditions of employment for Plaintiff, including setting the hours, rate of pay, and Additional Remuneration.

7.     At all relevant times herein, all Defendants were and are employers within the meaning of the FLSA and NYLL. Additionally, Safeway's qualifying annual business exceeded and exceeds

2

FILED: QUEENS COUNTY CLERK 11/18/2019 11:59 PM INDEX NO. 719515/2019

NYSCEF DOC. NO. 1 Case 1:20-cv-00054-KAM-RML Document 1-1 Filed 01/03/20 Page 6 of 16 PageID #: 10 RECEIVED NYSCEF: 11/18/2019

$500,000, and Safeway was and is engaged in interstate commerce with the meaning of the FLSA. Defendant SAFEWAY is a corporation organized under the laws of the State of New York with its principal place of business located at 54-60 44th Street, Maspeth, New York 11378.

*Defendants Are Joint Employers*

8.      Defendants Safeway and Primeline are associated and joint employers, act in the interest of each other with respect to employees, the same counsel, the same book-keeping/accounting policies, and share control over the employees.

9.      Defendants Safeway and Primeline possessed substantial control over Plaintiff's working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff.

10.      Defendants operate in concert and together in a common enterprise and through related activities, so that the actions of one may be imputed to the other, and/or they operate as joint employees and/or a single employer of Plaintiff within the meaning of the Civil Rights Act of 1964, as amended, the New York Labor Law, and/or were otherwise legally responsible for the matters alleged in this Complaint and proximately caused Plaintiff to be subject to the unlawful practices described in this Complaint.

11.      Primeline, on behalf of itself and all other Defendants, centrally controls business operations related to pricing, vendors, inventory replenishment, human resources, legal, accounting auditing and compliance for Safeway.

12.      Primeline, on behalf of itself and all other Defendants, sets all material policies for Plaintiff and other employees that are assigned to Safeway.

13.      Primeline implements and enforces top-down corporate policies, on behalf of itself and all other Defendants, including but not limited to policies relating to hiring/firing.

3

FILED: QUEENS COUNTY CLERK 11/18/2019 11:59 PM          INDEX NO. 719515/2019

NYSCEF DOC. NO. 1          Case 1:20-cv-00054-KAM-RML   Document 1-1   Filed 01/03/20   Page 7 of 16 PageID #: 11          RECEIVED NYSCEF: 11/18/2019

14.     Primeline controls and maintains a centralized database for purposes of training employees and distributing corporate information to all subsidiaries, including employees that are assigned to Safeway.

15.     Collectively, Defendants have directed the work of Plaintiff and have benefited from work performed that Defendants suffered or permitted from him.

16.     Pursuant to Defendants' policy, pattern and/or practice, Defendants unlawfully failed to properly compensate Plaintiff for his time worked under the FLSA and NYLL, as well as retaliated against him for, as explained in more detail below, complaining about a substantial and specific danger to the public health and safety.

## BACKGROUND FACTS

17.     Safeway is a site development and utilities construction corporation located in Maspeth, New York, which performs underground installation of infrastructure relating to gas, water, steam, electricity, and telecommunications, and additionally performs upgrades, expansions, and ongoing maintenance and repair on those same infrastructures, mainly on contracts that it possesses with Consolidated Edison, Inc. (commonly known as "Con Ed") and National Grid.

18.     Defendants Steve and Raymond Cestaro oversee Safeway's business on a day-to-day basis.

19.     Defendant Primeline owns and operates Safeway and directs all of its day-to-day operations.

20.     Plaintiff worked for Defendants Safeway and Primeline as a Supervisor from June 2009 through February 4, 2019. During this period, he supervised all certified gas mechanics for the Company.

21.     At the time of his termination, he was earning approximately $64.03 per hour, but also received, additional perks that would necessarily be included in his regular rate, such as (1) $200 a week premium plus five additional hours per week as consideration for being a supervisor; (2) a lease of a Chevrolet Silverado that was required to be used for work; (3) a cell phone; and (4) fuel for the vehicle (collectively, the "Additional Remuneration"). The Additional Remuneration was not remitted for additional time he worked, but was automatically given to him based on his role as being a "Supervisor" for Defendants. Defendants did not include the value of the Additional Remuneration in his regular rate when calculating his overtime – in violation of the FLSA and NYLL.

22.     Defendants did not compensate Plaintiff for the time he spent traveling to and from his home and the Yard. Plaintiff traveled in a work pickup truck, that had fuse machines, fittings, and other equipment/supplies necessary to perform work at the job sites. Plaintiff would also have to stop during his commute to pick up additional tools/supplies. None of this time was compensated.

23.     Throughout his employment, Mr. Culhane was required during weekdays to arrive to the Company's premises (hereinafter, the "Yard"), at 6:00 a.m., even though he would only begin getting paid at 7:00 a.m. Upon arriving at the Yard, Mr. Culhane would collect work orders, ascertain what employees were working, what the jobs for the day were, and would assign employees as appropriate. On weekends, Mr. Culhane similarly had to arrive one hour earlier (i.e., 7 a.m.) before he would be permitted to clock-in, as Defendants would not allow Plaintiff to clock-in before 8 a.m. Mr. Culhane worked virtually every Saturday and worked over half of all Sundays.

24.     Mr. Culhane was also not compensated for any time he worked at the Yard after 3:30 p.m. Mr. Culhane would often spend at least an hour after he returned to the Yard to close out work for the day and prepare for the following day. These duties would include, but are not limited to,

getting a route sheet, ordering material, contacting Con Edison as to deadlines and future jobs, and conferring with other supervisors to discuss future projects and anticipate/plan for weather issues.

25.     Defendants also failed to provide accurate wage statements in violation of the New York Labor Law ("NYLL"), § 195, and a notice and acknowledgment of pay form in violation of NYLL § 195.

26.     In or around the beginning of January 2019, Defendants' employee, Gino Colella, called Mr. Culhane to advise that Defendants' employee, Michael Brown, was doing gas installation work at residential properties in New York, but was not legally permitted to do such work.

27.     In fact, Mr. Brown had recently failed his licensing test that would have permitted him to perform gas installations. Because standard practice requires a license number to be written on the pipes that are installed during gas installations, Mr. Brown would call around asking for other individual's license numbers so he could superimpose them on the pipes that he was working on.

28.     Upon learning of this information from Mr. Colella, Plaintiff contacted Defendants' supervisor, Victor Schiano to advise that Mr. Brown was physically installing gas installations in non-compliance – thereby creating a danger to the public.

29.     When Mr. Culhane contacted Victor Schiano to advise what he heard from Mr. Colella, Mr. Culhane learned that Mr. Schiano was not only aware Mr. Brown was performing unlicensed work, but allowed it to occur because he believed Mr. Brown to be capable of doing the work (despite not being in compliance and having failed his qualifying test). Incredibly, Mr. Schiano was irritated at Mr. Culhane for raising the issue to him. Immediately thereafter, Mr. Colella was terminated.

30.     Upon learning of Mr. Colella's termination, Mr. Culhane contacted Sephir Hamlton, Executive VP of Safeway, in or around the end of January 2019 to object to the unlawful termination

6

of Mr. Colella and also to complain as to how unlicensed work put the public in danger. Shortly thereafter, National Grid required Defendants to reopen all prior work orders because it claimed to receive a complaint from Mr. Culhane that an unlicensed individual had completed work orders. This resulted in Defendants having to reopen roughly eighty (80) prior work orders – all with great cost and without any additional compensation from from National Grid. This was a tremendous burden to Defendants, as they had to pay for fully licensed individuals to dig up prior work and ensure everything was done properly. Defendants were highly resentful of Mr. Culhane for voicing his complaints.

31.     On February 4, 2019, Mr. Cestaro called Mr. Culhane to advise that Jon Sealander, the Executive Vice President of Safeway, "**doesn't want you around anymore because you caused all the problems with National Grid.**" Incredibly, Mr. Culhane was never written up or reprimanded for his work supervising and performing the functions of his job. Rather, the Company's termination was blatant retaliation for Mr. Culhane communicating to the Defendants, themselves, and to National Grid about a public safety emergency.

32.     The foregoing is unlawful conduct that is wholly prohibited by applicable laws.

### AS AND FOR A FIRST CAUSE OF AGAINST DEFENDANTS
#### *Unpaid Overtime Under the FLSA*

33.     Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

34.     Defendants employed Plaintiff within the meaning of the FLSA.

35.     Plaintiff was an "employee" within the meaning of the FLSA, and the Defendants were each a covered "employer" within the meaning of the FLSA.

36.     Defendants engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Complaint.

7

37.     The overtime wage provisions set forth in 29 U.S.C. §§ 201, et seq., apply to Defendants.

38.     Defendants had a policy and practice of failing to pay Plaintiff for all hours worked by virtue of its policy of requiring Plaintiff arrive an hour early each shift, clock out before he was finished working, and failing to pay for Plaintiff's time traveling when a function of his commute would include driving a truck with equipment necessary for the job.

39.     Defendants also had a practice of failing to include in Plaintiff's regular rate all the Additional Remuneration, which resulted in a lower valuation of the overtime rate.

40.     As a result of Defendants' willful failure to compensate Plaintiff for all hours worked, Defendants failed to compensate Plaintiff at a rate not less than one and one-half the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201, et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

41.     Defendants knew and/or showed reckless disregard that their conduct was prohibited by 29 U.S.C. §§ 255(a).

42.     As a result of Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants (a) overtime compensation; and (b) reasonable attorneys' fees, and costs and disbursements in this action, pursuant to 29 U.S.C. § 216(b).

43.     Because Defendants' violations of the FLSA lacked good faith, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

## AS AND FOR A SECOND CAUSE OF AGAINST DEFENDANTS
### *Unpaid Overtime and Gap Time Under the NYLL*

44.     Plaintiff repeats and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

8

FILED: QUEENS COUNTY CLERK 11/18/2019 11:59 PM INDEX NO. 719515/2019

NYSCEF DOC. NO. 1 Case 1:20-cv-00054-KAM-RML Document 1-1 Filed 01/03/20 Page 12 of 16 PageID #: 16 RECEIVED NYSCEF: 11/18/2019

45.     N.Y. Lab. Law § 160 and NYCCRR tit. 12, § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rate for any hours worked exceeding forty in a workweek.

46.     As described above, Defendants are an employer within the meaning of the NYLL, while Plaintiff was an employee within the meaning of the NYLL.

47.     As also described above, Plaintiff worked in excess of forty hours per week, yet Defendant failed to compensate Plaintiff for all overtime hours worked in accordance with the NYLL's and NYCCRR's overtime provisions.

48.     Plaintiff worked in excess of forty hours per week, yet Defendants failed to properly account for the Additional Remuneration in their calculation of the regular rate – thereby undervaluing the overtime paid in violation of the NYLL.

49.     Plaintiff is entitled to overtime pay for all hours worked in excess of forty per week at the rate of one and one-half times his respective regular rate of pay.

50.     Plaintiff is also entitled to gap time for any workweeks where he worked less than 40 hours in a workweek, but did not receive all the hours he worked as a result of always having to arrive one hour before he was allowed to clock in and having to clock out before he finished working.

51.     Plaintiff is also entitled to interest and attorney's fees for the Defendants' violation of the NYLL's and NYCCRR's overtime provisions.

### AS AND FOR A THIRD CAUSE OF AGAINST DEFENDANTS
*Failure to Provide Accurate Wage Statements under NYLL*

52.     Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

9

53.     NYLL § 195(1)(a) requires, among other things, that Defendants provide each employee with a relevant information concerning their compensation, Defendants' contact information, and an affirmation that the notice is in the employee's primary language.

54.     NYLL § 195(4) requires, among other things, that Defendants establish and maintain, for at least six years payroll records showing the hours worked, gross wages, deductions and net wages for each employee.

55.     NYLL § 661 requires that Defendants establish and maintain, inter alia, true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, and the wages paid to all employees.

56.     12 N.Y.C.R.R. § 142-2.6 requires Defendants to establish, maintain and preserve, for six years, weekly payroll records showing, inter alia, each employee's name, wage rate, number of hours worked daily and weekly, amount of gross and net wages, deductions from gross wages, and any allowances claimed as part of the minimum wage.

57.     NYLL § 195(3) requires that Defendants furnish each of its employees with a statement with each payment listing gross wages, deductions and net wages, and upon request of an employee, an explanation of the computation of wages.

58.     N.Y.C.R.R. § 142-2.7 requires Defendants to furnish each employee with a statement with each payment of wages, listing hours worked, rates paid, gross and net wages, deductions, and allowances, if any, claimed as part of the minimum wage.

59.     Defendants did not provide Plaintiff with the requisite notices and statements described above in the foregoing paragraphs.

60.     As a result of Defendants' failure to comply with the notice and record keeping requirements of NYLL §§ 195(1)(a) and 195(3), Plaintiff are entitled to recover from Defendants all penalties as provided by NYLL § 198(1)b and 198(1)d.

## AS AND FOR A FORTH CAUSE OF AGAINST DEFENDANTS
### Retaliation (NYLL §§215 and §740)

61.     Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

62.     Plaintiff complained that Defendants' employee, Michael Brown, was not authorized to perform gas installations.

63.     Michael Brown performed numerous gas installations without a proper certification – because he failed his latest qualifying examination.

64.     As a result, Michael Brown was not qualified to perform unsupervised gas installations.

65.     Despite Michael Brown being wholly unqualified, Michael Brown installed gas installations on behalf of residential customers in New York. Such act created a threat to the public at large, as improper gas installations can lead to explosions, fire, and loss of life. The threat Plaintiff complained of, therefore, presented a substantial and specific danger to the public health and safety.

66.     As detailed above, Plaintiff complained to his supervisor(s) at Defendants about Michael Brown's activity.

67.     Defendants ultimately terminated Plaintiff for complaining to them (1) about Michael Brown's unauthorized gas installations, (2) blowing the whistle to National Grid; and (3) complaining that Mr. Colella's termination violated NYLL.

68.     Plaintiff's complaints were protected under the NYLL.

11

69. Upon information and belief, Defendants blacklisted Plaintiff amongst other employers, as Plaintiff has been unable to find a job.

70. Defendants are liable to Plaintiff for, among other things, back pay, front pay, reinstatement, interest, and attorneys' fees and costs.

## DEMAND FOR A JURY TRIAL

71. Plaintiff demands a trial by jury on all issues and causes in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully request:

a. A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned New York State laws;

b. Preliminary and permanent injunctions against Defendants and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c. An order restraining Defendants from any further retaliation against Plaintiff for participation in any form in this litigation;

d. All damages that Plaintiff has sustained as a result of Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiff would have received but for the Defendants' unlawful payment practices;

e. An award to Plaintiff of their costs and disbursements incurred in connection with this action, including expert witness fees and other costs, as well as their reasonable attorneys' fees;

f. An order reinstating Plaintiff to the same position held before the termination;

12

g.     An order reinstating full fringe benefits and seniority rights;

h.     Pre-judgment and post-judgment interest, as provided by law; and

i.     Granting to Plaintiff any other and further relief as this Court finds necessary and proper.


Dated: New York, New York
       November 18, 2019

                         Stevenson Marino LLP
                         Attorneys for Plaintiff

                         By: ____s/Justin R. Marino_____

                         Justin R. Marino
                         75 Maiden Lane, Suite 402
                         New York, New York 10038
                         Tel: (212) 939-7228
                         Fax: (212) 531-6129
                         Email: jmarino@stevensonmarino.com

13